Matthew M. Loker, Esq. (279939)
**LOKER LAW, APC**
1303 East Grand Ave., Suite 101
Arroyo Grande, CA 93420
Tel: (805) 994-0177
Fax: (805) 994-0197
matt@loker.law

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## Southern Division

| | |
|---|---|
| TYRONA TUCKER, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> Defendant. | Case No.: _____ <br><br> **PLAINTIFF'S COMPLAINT FOR FCRA VIOLATIONS** <br><br> **JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff, TYRONA TUCKER, by and through the undersigned Counsel, and sues Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "Experian"). Plaintiff respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA").

**PRELIMINARY STATEMENT**

1.  This is an action for actual damages, punitive damages, costs, and attorneys' fees brought pursuant to the FCRA and CCRAA.

2.  Non-parties Equifax and TransUnion comprise the three major consumer reporting agencies ("CRAs") in the United States.

3.  CRAs that create and sell consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot

information they receive from entities that furnish them information, like Defendant, particularly where a consumer makes a dispute about information the CRAs are reporting.

4. When a consumer like Plaintiff disputes information through the CRAs, those disputes are electronically transmitted to the parties furnishing the information, in this case the furnisher is the Defendant.

5. The FCRA demands that each furnisher conduct a reasonable investigation of the consumer's dispute(s) and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6. Since furnishers generally have no duty to accurately report information to CRAs, individuals like Plaintiff have little recourse when creditors like Defendant are duped into granting credit by identity thieves and then improperly attribute those accounts to consumers who never opened them or authorized them to be opened.

7. Statutes like the FCRA and CCRAA therefore provide consumers with the only mechanism by which they can force furnishers to report accurate information about them.

## JURISDICTION AND VENUE

8. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

## PARTIES

9. Plaintiff was a natural person and resident of Kenosha County, Wisconsin during the relevant time. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Plaintiff is, and was, at all relevant times a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

11. Experian conducts business in the State of California through its registered agent, CT Corporation System located at 818 West Seventh Street,

Suite 930, Los Angeles, California 90017. Experian's headquarters are located within this District.

12. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer and consumer credit reports, as defined in 15 U.S.C. § 1681a(d).

13. Experian disburses such reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

***Plaintiff's Experiences with Defendant***

14. Plaintiff is a natural person who is alleged to owe a debt to State Farm Bank while she was a resident of California.

15. In a span of four days, from October 21 through October 24, 2019, an unknown person used Plaintiff's identification information to fraudulently apply for three separate personal loans with three separate entities: Cash Central, non-party Integra Credit, and non-party CashNet USA.

16. On November 7, 2019, CashNet USA sent Plaintiff an email with the subject line containing "Notice of Identity Fraud." The email stated in part:

> Dear Tyrona Tucker,
>
> We are writing to notify you of recent suspicious activity involving your personal information. On or about 2019-11-04, we learned that someone used your social security number and date of birth to attempt to gain unauthorized access to your online Cash/NetUSA account. Although the fraudster did not obtain your social security number or date of birth from us, they may have used this information to change the personal information associated with your account. However, we were able to block access to your online account before the perpetrator was able to

3

gain access.

17.   The Cash Central account was opened, and the fraudulent individual was able to obtain a $1,500.00 personal loan without Plaintiff's authorization.

18.   At the time, Plaintiff was using a service called Credit Karma that sent her an alert stating that Experian was reporting a Cash Central account. Plaintiff knew she had not applied for or authorized the account.

19.   On November 8, 2019, Plaintiff called the Cash Central Fraud Department to report the fraudulent loan that had been opened in her name.

20.   On November 19, 2019, Plaintiff emailed a copy of her driver's license and a completed fraud packet – consisting of an Identity Theft Victim's Complaint and Affidavit – to Cash Central Fraud Department at IdentityTheft@ccfi.com, stating that she had discovered the fraudulent Cash Central account on November 8, 2019.

21.   On December 21, 2019, Plaintiff sent a dispute letter to Cash Central by Certified Mail. In response, Cash Central sent her another fraud packet. It was the same fraud packet Plaintiff had already completed and emailed to Cash Central on November 16, 2019.   The Fraud packet included a Police fraud report.

22. On December 21, 2019, Plaintiff also mailed a letter to Experian disputing the Cash Central account. Plaintiff included her cell phone, address and email address.

23. When CRAs receive disputes like Plaintiff's, the FCRA demands that they immediately forward them, and all relevant information, to the furnishers whose credit accounts or tradelines are the subject of the disputes. The CRAs have a duty to conduct an independent investigation depending on the information they received.

24. The CRAs use a uniform electronic system, known as e-OSCAR, to transmit disputes to furnishers. The substance of the disputes and accompanying documents are transmitted using forms called automated consumer dispute verification ("ACDV") forms.

25. On January 29, 2020, Plaintiff received dispute results from Experian (Report # 1449-3034-30) indicating "The company that reported the information has certified to Experian that the information is accurate".

26. Experian failed to do any independent investigation and simply verified the fraudulent account. Plaintiff's credit limits were decreased by her actual creditors, and she began getting denied new credit due to the inaccurate reporting on her credit report by Defendant.

27. Plaintiff was very upset and on March 24, 2020, Plaintiff disputed again in writing to Experian the DFS/Cash Central of DE account. Within the very detailed dispute letter, Plaintiff again included a narrative of her

communications with DFS/Cash Central. Plaintiff clearly explained the fraudulent account was not hers.

28. Despite Plaintiff providing all the necessary information within her dispute letter, Experian responded to Plaintiff's dispute indicating, "We were unable to honor your request because you did not provide sufficient information".

29. Upon information and belief, based on Experian's letter, Experian failed to communicate with DFS/Cash Central and failed to confirm the fraudulent account.

30. On April 24, 2020, Plaintiff received notice that the credit line for her Barnes & Noble Mastercard with Barclay's Bank was being reduced.

31. On May 4, 2020, Plaintiff was denied a ECU credit card application based mostly on Experian's refusal to remove the derogatory, fraudulent account with DFS/Cash.

32. Plaintiff felt helpless and continued to be upset and on May 7, 2020, Plaintiff disputed again in writing to Experian the DFS/Cash Central of DE account. Within the very detailed dispute letter, Plaintiff again included a narrative of her communications with DFS/Cash Central. Plaintiff clearly explained the fraudulent account was not hers. Plaintiff again attached a Fraud Notice with the Kenosha Police Department and a copy of a fake/altered BancFirst check. Plaintiff also included several statements from the her checking account to demonstrate the fraud.

33. Experian verified the fraudulent account to Plaintiff.

34. Rather than doing any sort of investigation of its own, Experian allowed DFS/Cash Central to simply verify Plaintiff's information that she indicated had been stolen from her (name, SS, DOB).

35. Defendant had more than enough information to learn the illicit nature of the account. Plaintiff had detailed that she was the victim of identity theft, therefore simply verifying the above information served no purpose.

36. This is particularly true given the nature of identity theft. Of course the Defendant's records contained at least Plaintiff's name, date of birth, and Social Security Number tied to the fraudulent account, as that is the type of information thieves take and use to open fraudulent accounts.

37. Plaintiff was denied a rental application with McMath Realty LLC based on the lowered credit score caused by the fraudulent DFS/Cash Central account on her Experian record.

38. Instead, Experian failed to investigate the bank statements produced by Plaintiff, to contact any of the law enforcement agencies involved, or to call Plaintiff by phone to collect evidence of the fraud, Defendant took the inexpensive avenue of simply verifying the fraudulent account.

**The Automated Handling of Credit Disputes**

39. When Plaintiff mailed her detailed, written disputes and enclosures to the CRAs, they use a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers

such as State Farm Bank. It is an automated system and the procedures used by the CRAs are systemic and uniform.

40. When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor) translates that dispute into an "ACDV" form.

41. The ACDV form is the method by which the Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2.

42. The law in this District, the Ninth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher and an independent investigation by Experian when it receives a consumer's FCRA dispute.

43. As a result of the inaccurate credit reporting and inadequate investigation of Plaintiff's disputes, Plaintiff has suffered damages including, but not limited to:

    i. Higher interest rate;

    ii. Deceased credit limits on existing credit cards;

    iii. Denial in application for new credit card use or higher limits;

    iv. Monies lost by attempting to fix her credit, such as communication costs, postage for disputes;

    v. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life;

      vi.    Stress associated with hundreds of hours attempting to resolve this matter,

44. All conditions precedent to the filing of this action has occurred.

## CAUSES OF ACTION

### COUNT I
### Experian's Violations of FCRA § 1681e(b)

45. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

46. Plaintiff made it clear to Experian in her disputes that the accounts it attributed to her did not belong to her and she had not authorized it, included information about a police fraud report and an Identity Theft Victim's Complaint and Affidavit regarding the inaccurate accounts, and provided identification along with the disputes.

47. Rather than having in place procedures to account for correcting such patent inaccuracies, discovery will show that Experian relies exclusively on furnishers for the accuracy of account information when deciding whether to report it.

48. In fact, Experian relies on furnisher information exclusively even with it is told, as Plaintiff did, that it is reporting an account that does not belong to a consumer.

49. All of Experian's reporting of Plaintiff's accounts was done according to Experian's established policies and procedures. Discovery will show that Experian reported Plaintiff's accounts exactly as designed, and none of the reporting was the result of mistake or error.

50. As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damages by stress associated with credit denial, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

51. Plaintiff provided three police report numbers, an FTC report number and many details that Experian purposely ignored. The details from Plaintiff's disputes should have triggered a procedure to independently evaluate the account information before reporting it, yet Experian failed to do so.

52. Experian's conduct, action, and inaction were willful, rendering it liable for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

53. The Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EXPERIAN

INFORMATION SOLUTIONS, INC., for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### Experian's Violation of FCRA § 1681i

54. Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Plaintiff provided sufficient details that should have led Experian to identify the fraud. Experian chose to ignore the disputes by Plaintiff and instead rely on the Furnisher for account information.

55. Discovery will show that Experian's investigation into disputes is perfunctory and designed to feign compliance with the FCRA. The processes and procedures are meant to devote as little time as possible to an investigation, because investigations cost Experian money by having to pay dispute agents to conduct the investigations, and investigations earn Experian no profit.

56. Experian's resulting business approach to investigations means that it relies almost exclusively on furnishers for account information.

Discovery will show that in Plaintiff's case, all Experian did was send the ACDVs of Plaintiff's disputes to the Furnisher Defendants, and then respond to Plaintiff with whatever information the Furnisher Defendants sent to Experian.

57. While Experian is duty-bound under the FCRA to conduct its own, independent investigation of Plaintiff's disputes, Experian does nothing. Such is confirmed by the fact that Experian never called, emailed, or otherwise contacted Plaintiff to discuss her disputes.

58. Discovery will further confirm that Experian did not contact the City of Kenosha Police Department about Plaintiff's complaints of identity theft.

59. As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damages by stress associated with a high interest rate, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

60. Experian's conduct, action and inaction as willful, rendering it liable for actual damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o. Experian was made aware of the identity theft by Plaintiff providing a police fraud notice and contact information.

61. The Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

WHEREFORE, the Plaintiff demands judgment and compensatory and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

### PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for State Farm Bank violations of the FCRA;

(2) Award Plaintiff post-judgment interest; and

(3) Award all other relief, including equitable relief, as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

13

PLAINTIFF'S COMPLAINT

|     |                                                                 |
| --- | --------------------------------------------------------------- |
| 1   |                                                                 |
| 2   |                                                                 |
| 3   | Respectfully submitted,                                         |
| 4   | **TYRONA TUCKER**                                               |
| 5   | By: _____<br>Matt Loker, Esquire                 |
| 6   | Bar #; 279939<br>**LOKER LAW, APC**                             |
| 7   | 1303 East Grand Ave., Suite 101<br>Arroyo Grande, CA 93420      |
| 8   | Tel: (805) 994-0177<br>Fax: (805) 994-0197                      |
| 9   | matt@loker.law                                                  |
| 10  | ***Attorney for Plaintiff***                                    |
| 11  |                                                                 |
| 12  | ***/s/Octavio Gomez   (Pro hac Forthcoming)***<br>Octavio "Tav" Gomez, Esquire |
| 13  | Florida Bar #: 0338620<br>Georgia Bar#: 617963                  |
| 14  | Pennsylvania Bar#: 325066<br>The Consumer Lawyers PLLC,         |
| 15  | 3210 W. Cypress St<br>Tampa, Florida 33609                      |
| 16  | Telephone: (844) 855-9000<br>Cell: (813) 299-8537               |
| 17  | Facsimile:   (844) 951-3933<br>Email:                           |
| 18  | Tav@TheConsumerLawyers.com<br>Jason@TheConsumerLawyers.com      |
| 19  | Attorney for Plaintiff                                          |
| 20  |                                                                 |
| 21  |                                                                 |
| 22  |                                                                 |
| 23  |                                                                 |
| 24  |                                                                 |
| 25  |                                                                 |
| 26  |                                                                 |
| 27  |                                                                 |
| 28  |                                                                 |